922 So.2d 1085 (2006)
V.M., the Father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D05-3431.
District Court of Appeal of Florida, Fourth District.
March 22, 2006.
*1086 Barbara D. Stull, Hobe Sound, for appellant.
Pilar Harris, Fort Pierce, for appellee.
STEVENSON, C.J.
This appeal arises from a final order terminating the parental rights of V.M. ("the Father") regarding his minor child ("the child"), born January 11, 2000. For the reasons explained herein, we reverse.
DCF originally filed a Verified Petition for Adjudication of Dependency on September 13, 2001, due to repeated criminal problems with the child's mother and the incarceration of the Father. The child was never adjudicated dependent, but on November 21, 2001, pursuant to a Shelter Order, was placed in the home of a nonrelative guardian, with whom the child has remained to date.
On September 19, 2003, a Verified Petition for Termination of Parental Rights/Permanent Commitment was filed. The petition alleged that (1) termination was appropriate for the Father under section 39.806(1)(d), Florida Statutes, because of his incarceration for a substantial portion of the child's life; (2) termination was appropriate for both parents under section 39.806(1)(c) because they have "engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services"; and (3) termination was appropriate for the mother under section 39.806(1)(e) for the failure to comply with her case plan.
A hearing on the merits was held May 13, 2005. At the conclusion of the hearing, the court made an oral ruling terminating the parental rights of both parents, which was subsequently memorialized in a written order on August 8, 2005. The Father has timely appealed.
We agree with the Father that the trial court erred in terminating his parental rights where DCF failed to make reasonable efforts to rehabilitate the Father and to reunify the family. "DCF `carries the burden not only to establish a ground for termination but the continuing substantial risk of harm to the current child.'" C.B. v. Dep't of Children & Families, 874 So.2d 1246, 1253 (Fla. 4th DCA 2004) (quoting F.L. v. Dep't of Children & Families, 849 So.2d 1114, 1122 (Fla. 4th DCA 2003), reversed on other grounds, 880 So.2d 602 (Fla.2004)). "`This means that [DCF] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.'" *1087 Id. (quoting F.L., 849 So.2d at 1120).[1]
A review of the testimony of the DCF representative attending the hearing reveals DCF never prepared a formal case plan for the Father, who was incarcerated. DCF did not have direct contact with the Father while he was incarcerated, but, through the Father's attorney and as a task for a voluntary case plan, arranged for the Father to complete a videotaped parenting course prior to his release. DCF did not devise anything other than the voluntary case plan with the Father because he was considered a non-offending parent while he was incarcerated. The DCF representative testified the goal for the Father completing the in-prison parenting course was reunification and the length of the Father's incarceration would not have been problematic for the reunification goal because, although he had been incarcerated the entire length of DCF's involvement, the Father was scheduled to be released soon after completing the parenting course.
The Father was released in July 2004, violated the terms of his release, and was reincarcerated by the time of the May 2005 hearing.[2] Approximately seven months passed between the Father's release and his reincarceration. Not only had the Father successfully completed his task under the voluntary case plan, but, during the seven months he was not incarcerated, the Father attended an August 2004 court proceeding, met with the current caseworker, asked permission to visit the child, and thereafter visited regularly.[3] Yet, the record does not reveal any evidence that DCF made any attempt at rehabilitation or reunification with regard to the Father. DCF should have made such a good faith effort as part of its required reasonable efforts. See C.B., 874 So.2d at 1252-53.
We also note that parental rights should not be terminated merely because of the Father's criminal history and incarceration history, without more. See § 39.806(1)(d), Fla. Stat.; D.S. v. Dep't of Children & Families, 842 So.2d 1071 (Fla. 4th DCA 2003) (affirming final order of termination as supported by competent, substantial evidence, but noting trial court's finding that father's criminal history demonstrated his involvement in child's life would threaten child's well-being regardless of level of social services was not supported by record).
Based on the foregoing, we reverse the order terminating the Father's parental rights; the child shall remain in protective custody. Our reversal of the order terminating the Father's parental rights is without prejudice to DCF's right to file a new petition for termination if the circumstances warrant.
Reversed and Remanded.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] Under section 39.806(2), "[r]easonable efforts to preserve and reunify families shall not be required if a court of competent jurisdiction has determined that any of the events described in paragraphs (1)(e)-(i) have occurred." Here, as argued by the Father, none of the factors in (1)(e)-(i) apply.
[2] The Father is currently serving a fifteen-month sentence and set to be released from prison in July 2006.
[3] The Father's testimony regarding these facts was undisputed; when questioned about the Father's presence at the August 2004 court proceeding, the DCF representative "did not remember."