PLEUS, C.J.
The father appeals a final judgment terminating his parental rights and allowing the stepfather to adopt his two children. We note at the outset that he does not challenge the trial court’s findings regarding the grounds for termination or best interests of the children. Instead, he argues that involuntary termination of parental rights procedures under Chapter 63 of the Florida Statutes are facially unconstitutional because they fail to contain a requirement that termination be the least restrictive means of protecting the children. Alternatively, he argues that termination of his parental rights was not the least restrictive means of protecting the children in this case. We affirm.
Facts
The mother filed a petition to terminate parental rights pending a stepparent adoption under Chapter 63, Florida Statutes. The petition alleged that the father had abandoned the children, had willfully refused to pay child support, and had been sentenced to ten years in federal prison. After an adjudicatory hearing, the trial court terminated the father’s parental rights, finding that the father had abandoned the children and that he would be incarcerated for a substantial portion of the time before the children reached eighteen years of age. The court also found that termination was in the children’s best interests.
Constitutional Challenge to Chapter 63
On appeal, the father argues that Chapter 63 is unconstitutional on its face because there is no requirement that termination be the least restrictive alternative. He did not raise this argument below. Instead, he argued that the United States Constitution required the judge to consider whether termination was the least restrictive means of protecting the children. However, facial constitutional attacks and attacks involving a fundamental liberty interest, such as parental rights, may be raised for the first time on appeal. See B.C. v. Dep’t of Children & Families, 864 So.2d 486, 491 (Fla. 5th DCA 2004); In Interest of D.M., 616 So.2d 1192 (Fla. 4th DCA 1993). The de novo standard applies to reviewing facial constitutional challenges and arguments relating to lack of findings in a final order. See, e.g., Am. Fed. of Labor & Cong, of Indus. Orgs. v. Hood, 885 So.2d 373 (Fla.2004).
Neither Chapter 39 nor Chapter 63 expressly require the court to find that termination is the least restrictive means of protecting the child. Florida courts have simply added this test to Chapter 39 involuntary termination analysis as a constitutionally-mandated requirement. See In Interest of L.B.W., 863 So.2d 480, 483 (Fla. 2d DCA 2004) (citing Padgett v. Dep’t of Health & Rehab. Servs., 577 So.2d 565, 571 (Fla.1991)). However, no Florida court has passed on the issue of whether the least restrictive means test is constitutionally required in a Chapter 63 involuntary termination proceeding.
In general, a court must resolve all doubts as to the validity of a statute in favor of its constitutionality, provided it can give the statute a fair construction that is consistent with the Florida and federal constitutions and with legislative intent. State v. Globe Commc’ns Corp., 648 So.2d 110, 113 (Fla.1994).
There is no meaningful distinction between a Chapter 63 involuntary termination proceeding and a Chapter 39 involuntary termination proceeding with regard to the least restrictive means test. That test springs from the idea that when the state infringes upon constitutionally-protected activity, it must do so in a narrowly- *33 tailored manner. See Dunn v. Blumstein, 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Although a Chapter 63 involuntary termination proceeding differs from a Chapter 39 proceeding in that the plaintiff is not the state, the end result is the same — the state, via the judicial branch, terminates a parent’s constitutionally-protected parental rights. In M.E.K. v. R.L.K., 921 So.2d 787 (Fla. 5th DCA 2006), we concluded that indigent parents have a constitutional right to counsel in involuntary termination proceedings under Chapter 63, noting that in M.L.B. v. S.L.J., 519 U.S. 102, 117 n. 8, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), the United States Supreme Court noted that whether a parental termination proceeding is brought by a state agency or a private party as a prelude to adoption, “the challenged state action remains essentially the same: imposition of an official decree extinguishing, as no power other than the State can, [the] parent-child relationships.” M.E.K at 790-91.
Because involuntary termination of parental rights proceedings under Chapters 39 and 63 both involve state infringement upon a fundamental right, we believe the least restrictive means test should apply to Chapter 63 involuntary termination proceedings as it has been applied to Chapter 39 involuntary termination proceedings.
The Instant Case
The father argues that termination cannot be the least restrictive means of protecting the children because they reside with the mother. In support of this argument, he cites numerous cases in which termination orders were reversed because the trial court failed to consider long-term relative placement. See, e.g., C.M. v. Dep’t of Children & Families, 953 So.2d 547, 2007 WL 412790 (Fla. 1st DCA Feb. 8, 2007); M.H. v. Dep’t of Children & Families, 866 So.2d 220, 223 (Fla. 1st DCA 2004).
However, the existence of a long-term relative placement is not the “disposi-tive constitutional consideration” in applying the least restrictive means test. Nor is the least restrictive means test intended to preserve the parental bonds at the cost of a child’s future. See, e.g., D.B. v. Dep’t of Children & Families, 940 So.2d 516 (Fla. 5th DCA 2006). Instead, this test requires that “those measures short of termination should be utilized if such measures can permit the safe reestablishment of the parent-child bond.” S.S. v. D.L., 944 So.2d 553 (Fla. 4th DCA 2007) (quoting L.B. v. Dep’t of Children & Families, 835 So.2d 1189, 1196 (Fla. 1st DCA 2002)). The “clear purpose” of the least restrictive means test is “reestablishment of the parent-child bond.” In Interest of K.W., 891 So.2d 1068, 1070 (Fla. 2d DCA 2004) (quoting M.H. v. Dep’t of Children & Families, 866 So.2d 220, 223 (Fla. 1st DCA 2004)).
In the instant case, the trial court found that there was no bond between the father and the children. He had abandoned the children and had had no contact with them since they were ages two and four. The children did not relate to him as their father. Thus, similar to the situation in In Interest of K.W., there was “little or no bond to protect and there was never a parent-child relationship to reestablish. ...” 891 So.2d at 1070. The father will be incarcerated until 2012, at which time the children will be fourteen and sixteen. They do not have contact with the father. The guardian ad litem testified, based on personally visiting the prison and interviewing numerous people, that requiring the children to visit the father would be detrimental to them. The trial court also noted a letter in the court file from the school guidance counselor which expressed the same opinion. Furthermore, *34 the children’s stepfather has acted in every capacity as their real father and wants to adopt them. Accordingly, there was ample evidence that termination of the father’s parental rights was the least restrictive means of protecting the children.
AFFIRMED.
SAWAYA and EVANDER, JJ., concur.