24 So.3d 669 (2009)
F.L.C., Father of J.L.C. and J.L.C., Children, Appellant,
v.
G.C. and N.C., Stepfather and Mother, etc., Appellees.
No. 5D08-4231.
District Court of Appeal of Florida, Fifth District.
December 17, 2009.
*670 Brenda H. Smith, Umatilla, for Appellant.
Brian J. Welke, Eustis, for Appellee.
EVANDER, J.
The father appeals from a final judgment terminating his parental rights. He contends that the evidence was insufficient to establish abandonment and that the termination of his parental rights was not the least restrictive means to protect the children. We disagree and, accordingly, affirm the final judgment.
In December 2007, the mother and stepfather filed their Joint Petition for Adoption by Step-Parents seeking, inter alia, to terminate the father's parental rights to twin boys born in March 1997. The petition alleged that the father had abandoned the children. The adjudicatory hearing was held on October 13, 2008.
Abandonment may be found where there is clear and convincing evidence that the efforts of a parent to support and communicate with the child are "only marginal efforts that do not evince a settled purpose to assume all parental duties." § 63.032(1), Fla. Stat. (2008); see also M.A.F. v. E.J.S., 917 So.2d 236 (Fla. 5th DCA 2005). Here, the trial court's determination that the father had abandoned the children was amply supported by the record. The evidence supported the trial court's findings that the father 1) had no meaningful relationship with the children, 2) had made less than marginal efforts to communicate with his sons, and 3) had failed to provide adequate support.
The lack of a meaningful relationship between the father and his sons was caused, in part, by the father's criminal propensities. The evidence established that because of his commission of various felonies, the father had been incarcerated for over half of the children's lives. Specifically, the father was incarcerated from August 27, 1998 through May 2, 1999; from October 1, 1999 through July 26, 2005; and from July 3, 2008 through the date of the hearing. Furthermore, the father's anticipated release date from his current incarcerative sentence is October 21, 2012. Thus, by the time of his anticipated release date (when the boys are 15½ years old), the father would have been incarcerated for approximately two-thirds of the children's lives. Indeed, the children's counselor testified that the boys' primary memories of their father were from visiting him in jail or prison. The boys did not want to recommence these visits and the father, himself, acknowledged *671 that he knew very little about his sons.
The evidence also supported the trial court's finding that the father's efforts to communicate with his children were less than marginal. The father had only two face-to-face contacts and one telephone conversation with the children subsequent to his release from prison in July 2005. In the preceding five years, the father had been visited by the boys in prison on seven or eight occasions. Prior to that time, the father's contacts with his children were sporadic, at best.
The father's lack of financial support for the children also supported the trial court's finding of abandonment. The father provided no financial support for the first 8½ years of the children's lives. After being ordered to make child support payments on December 13, 2005, the father made only sporadic payments, although employed for much of the ensuing thirty-month period of time. Since January 1, 2006, his child support payments were in arrears in excess of $9,000.
The undisputed evidence also reflected that the stepfather had been meeting the boys' emotional and financial needs and established a significant father/son relationship with them. Given the relationship between the stepfather and the children, the stepfather's desire to adopt the boys, and the court's finding that the father had abandoned the children, it is clear that termination of the father's parental rights was in the children's best interest.
We also reject the father's contention that reversal is required because the trial court failed to make a specific finding in its written order that termination of parental rights was the least restrictive means to protect the children. This court has previously held that because involuntary termination of parental rights proceedings under Chapter 63 involves state infringement upon a fundamental right, the least restrictive means test should apply to Chapter 63 involuntary termination proceedings in the same manner as applied to Chapter 39 involuntary termination proceedings. A.J. v. K.A.O., 951 So.2d 30, 32 (Fla. 5th DCA 2007). However, the least restrictive means test is not intended to preserve the parental bonds at the cost of a child's future. Id. The least restrictive means test simply requires that measures short of termination be utilized if such measures would permit the safe re-establishment of the parent/child bond. Id.; see also M.M. v. Dep't of Children and Families, 931 So.2d 280 (Fla. 5th DCA 2006); K.B. v. Dep't of Children and Families, 834 So.2d 368, 369 (Fla. 5th DCA 2003). Here, the trial court specifically found that the father did not have a meaningful father/child bond with either of his two sons. Where there is little or no bond to protect and there was never a parent/child relationship to re-establish, termination of parental rights is not barred by the application of the least restrictive means test. A.J., 951 So.2d at 33; see also Interest of K.W., 891 So.2d 1068, 1070 (Fla. 2d DCA 2004).
AFFIRMED.
PALMER and ORFINGER, JJ., concur.