SUAREZ, J.
The Father (D.R.) and Mother (N.S.) of the minor children seek to reverse a final order terminating their parental rights. We affirm.
The record shows that the three minor children were placed in shelter care after the Mother was found wandering the street with them at four in the morning; the children were hungry and dirty. The Mother was unable to say where she lived. The children were found to have multiple health problems related to poor nutrition and lack of hygiene; all three were developmentally delayed. After investigation by the Florida Department of Children and Families [“DCF”] and the Guardian ad Litem [“GAL”] appointed to represent the children’s interests, DCF subsequently filed a dependency petition alleging that the Mother, who is mentally impaired and homeless, is unable to care for her children. DCF also alleged that the Father of one of the children, D.S.[1], should have known that his child was homeless, should have assisted, but failed to support and care for his child, and failed to protect the child from an inadequate custodian, i.e., the Mother. The court adjudicated the children dependent as to both parents.
DCF placed the children in foster care in 2007, with a plan for reunification with the Mother. The Mother completed her required referred services, but because two separate psychologists opined that she could still not ever, realistically, safely parent the children on her own because of her limited intellect, the GAL moved for a change of goal from reunification to adoption. In addition, the GAL expressed concern that, although the paternal grandmother had been actively involved with the Mother and children prior to the shelter hearing, she had done nothing to ameliorate the children’s detrimental living conditions and resulting ill health and developmental delays.
The Father was incarcerated throughout this period. He was given pre- and post-dependency referrals for substance abuse counseling and parenting classes. The record shows that the Father refused to attend the referred services, and did not have the ability to maintain a household or provide a stable environment for his child, D.S. He has not sought to visit or support D.S. but, rather, expressed a desire to have his grandmother care for the child. *778 The paternal grandmother expressed an interest in having the Mother and children live with her, but the home study revealed that her home was inadequate to support three children and the Mother, and that she herself was too elderly to manage that household. A cousin expressed an interest in assisting with caring for the children, but did not express a desire to become the permanent guardian or to adopt.
The children have been evaluated since they entered foster care in 2007 with a caregiver who seeks to adopt them and is willing to keep them bonded with the Mother. The children have thrived in foster care, and have markedly improved in both physical and mental health. The record reflects that there are no other relatives to competently care for the children. The final judgment terminating , both parents’ rights was entered in June 2009, and in that order the judge made detailed factual findings and legal conclusions pursuant to statutory requirements. Both parents appeal.
We are very mindful that parental rights constitute a fundamental liberty interest. Padgett v. Dep’t of Health & Rehab. Servs., 577 So.2d 565, 570 (Fla.1991) (citations omitted). Thus, in order to terminate parental rights, DCF must proceed in a narrowly tailored manner and must prove that, in addition to the statutory requirements for termination of parental rights, that termination is the least restrictive means of protecting the child from serious harm. Id.; § 39.806(1)(c), Fla. Stat. (2009). As the court in Padgett explained, the least restrictive means test means simply that “[DCF] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.” Padgett, 577 So.2d at 571; L.D. v. Dep’t of Children & Family Servs., 957 So.2d 1203 (Fla. 3d DCA), review denied, 967 So.2d 197 (Fla.2007); see also In re K.W., 891 So.2d 1068, at 1070 (Fla. 2d DCA 2004) (“Padgett describes the least restrictive means as those that offer the parent a case plan and time to comply with the plan so as to obtain reunification with the child.”); B.C. v. Fla. Dep’t of Children & Families, 887 So.2d 1046, 1050 (Fla.2004) (requiring application of the least restrictive means test to termination proceedings pursuant to section 39.806(l)(d)l., which applies in instances where a parent has been incarcerated); Fla. Dep’t of Children & Families v. F.L., 880 So.2d 602 (Fla.2004); In re T.M., 641 So.2d 410, 412-13 (Fla.1994) (holding that the least restrictive means analysis requires only that state prove good faith effort to rehabilitate parent and unify family by providing case plan and related services); A.J. v. K.A.O., 951 So.2d 30, 32 (Fla. 5th DCA 2007) (same). The least restrictive means test is not intended to preserve the parental bonds at the cost of a child’s future. A.J., 951 So.2d at 30.
With that in mind, the record contains competent and substantial evidence that the Father failed to complete pre-and post-dependency referrals for substance abuse and parenting as set forth in the case plan, failed to financially support his child or provide adequate housing or medical care for that child, failed to consistently visit with the child, and lacks the disposition necessary to provide his child with food, clothing, medical or other remedial care. The Father did not express a desire to take on the responsibility of a full-time parent but would rather the elderly grandmother care for the child and siblings where it is apparent that she is an inappropriate caretaker. The Father is, essentially, challenging the dependency order’s findings that he failed to protect the child from the Mother. He cannot now, howev *779 er, collaterally attack the dependency order after the entry of a final order terminating his parental rights.
We find that DCF made reasonable efforts in good faith to rehabilitate the Father and reunite him with his child through a detailed case plan, and that the record contains clear and convincing evidence that the Father failed to comply. See J.R. v. Dep’t of Children and Family Services, 754 So.2d 714 (Fla. 4th DCA 1998) (affirming termination of parental rights where clear and convincing evidence showed that the parent failed to substantially comply with case plan). We agree with the trial court that termination of the Father’s parental rights was the least restrictive means of protecting his child D.S. from harm, and will allow D.S. to achieve permanency and stability in his life. We affirm the order terminating the Father’s parental rights as to his child, D.S.
As to the Mother, we find competent and substantial evidence in the record that the Mother’s intellectual deficits resulted in actual physical and psychological harm to the children, although the record also shows that she loves her children and that they are bonded with her. The record contains expert testimony that the Mother’s low functioning intellect prevents her from ever safely parenting the children on her own and, despite the provision of social services, there is no reasonable basis to believe that she will improve. Although a parent’s intelligence level ordinarily is irrelevant to the inquiry, see Smith v. Dep’t of Health & Rehab. Servs., 665 So.2d 1158 (Fla. 5th DCA 1996), we find, as did the court in A.W. ex rel. B.W. v. Dep’t of Children & Families that:
Appellant’s low I.Q. and mild mental retardation render her unable to learn the basic parenting skills necessary to rear her child, despite Appellant’s intermittent, incomplete efforts to do so. It is not unreasonable to conclude that Appellant remains basically dependent herself. Therefore, although she is a loving parent who technically performed all the superficial tasks set out in the case plan, Appellant failed to demonstrate her ability to comprehend what the case plan requires in terms of implementing the basic skills necessary to be an effective parent. In other words, the record demonstrated that Appellant could not achieve a level of comprehension and behavior necessary to ensure B.W.’s health, safety, and well-being irrespective of the Department’s provision of more services. Appellant’s acts and omissions simply did not square with the Florida Legislature’s definition of “substantial compliance.” See § 39.01(71), Fla. Stat. (2006).
A.W., 969 So.2d at 503. We agree with the trial court that, should the children remain in her care, there is risk of prospective harm to them as well.
The existence of possible placement with a relative is irrelevant to the least restrictive means test, where DCF made reasonable efforts to rehabilitate the Mother and provide services to her and her children with the goal of reuniting them as a functional family. See R.L. v. Dep’t of Children and Families, 955 So.2d at 1240 (Fla. 5th DCA 2007) (“The existence of a long-term relative placement is not the ‘disposi-tive constitutional consideration’ in applying the least restrictive means test.”); In re K.W., 891 So.2d at 1070. Although a relative came forward, it was with the offer to assist with the care of the children, not to adopt or to become a permanent guardian. As the record makes clear, the paternal grandmother was not a suitable placement for the Mother and children. We agree with the trial court that there is compelling and substantial evidence that the Mother is unable to safely parent the *780 children, and especially where the court heard evidence that the foster Mother is willing to adopt and to maintain regular contact between the Mother and her children in order to maintain their parent/child bonds. We find substantial and competent evidence in the record to support the trial court’s required statutory findings, and conclude that the court correctly applied the least restrictive means test as to the Mother. We agree with the trial court’s determination concerning the manifest best interest of the children and affirm the order terminating the Mother’s and Father’s parental rights.
Affirmed.
GERSTEN, J., concurs.

. The Father of D.S. is not married to the Mother; the father of the two remaining children are unidentified.