WARNER, J.
 

 A mother and father appeal the trial court’s order terminating their parental rights to their child. The mother argues that the Department of Children and Families failed to prove any ground for termination and further failed to establish that the provision of additional services to the mother would be futile. The father complains that the court erred in finding that the termination of his rights was the least restrictive means to protect the child when a relative was available to care for her. We affirm the termination of rights of both parents, finding that the record supports termination on each ground of termination and that termination is the least restrictive means of protecting the child from harm.
 

 The mother, A.B.E., gave birth to M.D. in 2005. Both mother and child tested positive for cocaine, and M.D. was sheltered and then placed with foster parents. A.B.E. was given a case plan by the Department of Children and Families with six tasks. While working on the tasks, the mother failed a drug test and then attempted suicide by shooting herself with a gun, resulting in her paralysis. Despite this, the mother completed most of the case plan tasks. Those tasks included, among others, receiving substance abuse treatment, having in-home parenting upon reunification with the child, and having a mental health evaluation. During this time, the child was also receiving therapy, as she had some developmental issues.
 

 
 *349
 
 Mother and child were reunited in June of 2008. After reunification, the child’s therapist conducted three sessions with the mother to help her deal with the child’s behavioral issues. Another in-home parenting instructor also worked with the mother, meeting with her twice a week for four to six hours per week to assist the mother in learning how to parent.
 

 At first the reunification seemed to go well. However, the child’s therapist noticed that the child seemed more withdrawn. By September, however, both the child’s therapist and the in-home instructor observed that the mother was not handling the child well at all. The therapist did not observe a bond or attachment between mother apd child. That same month the in-home instructor also observed that the mother was unnecessarily upset with the child’s behavior. The in-home instructor concluded that although the mother had completed the in-home parenting program, she didn’t comprehend what it meant to be a parent. Thus, the instructor would not give the mother a certificate of completion.
 

 In September, the child’s Guardian Ad Litem visited the child at her day care and observed bruising on her lip. Several days later, day care workers noticed the child had bruising on her cheek consistent with a slap. The DCF case manager again removed the child from the mother’s home. After an examination of the child by the Child Protection Team, she was returned to the foster parents. The CPT documented four injuries in various stages of healing: a “busted lip,” a scratch above the ear, a red mark on her cheek, and two bumps on the forehead.
 

 A detective interviewed the mother, who admitted striking the child on at least two occasions. She admitted that she punished the child for having potty accidents, for failing to eat, and for failing to clean up her room, even though the child was only three years old. The mother was criminally charged with child abuse, after which DCF filed the petition for termination. Later, the mother pled no contest to the charges, and was placed on 18 months of probation. A special condition of her probation was to have no contact with her child unless the dependency court did not terminate parental rights. Consistent with that condition, she did not contact the child at any time, although she sent one birthday gift. Additionally, she never made an inquiry to the DCF case manager as to the child’s welfare, nor did she ask about what other tasks she must accomplish in order to reunify with her daughter.
 

 At trial the case manager testified that the mother was not in compliance with the case plan for the simple fact that when mother and daughter were reunited the mother ended up abusing the child. The in-home parenting consultant also testified that she did not give the mother a certificate of completion because of the mother’s failure to comprehend parenting. In addition, the CPT nurse practitioner who examined the child when she showed signs of abuse testified that if the mother had had two parenting classes before reunification and continued to abuse the child, the child’s safety was very much at risk. The CPT clinical supervisor testified that from the short period of time that the child was in the primary care of the mother, after the mother had already received services, it appeared that the mother had not learned or benefitted from the services, because she was still abusing the child.
 

 As to the father, the case manager testified that the father was incarcerated when the child was first in foster care. When he was released, DCF tried to start a new case plan for him. He had substance abuse referrals and never completed the case plan. He was very inconsistent in
 
 *350
 
 setting up visits with the child. Then in November 2008 he was again incarcerated, released, and then incarcerated again, where he remained through the date of the final hearing.
 

 The father had requested that DCF find suitable placement with his nieces. One niece was not suitable, because she was in the military and due to be shipped out. A home study on the second niece initially found that the home was acceptable, but then she moved in with her brother. The home study on that residence was unacceptable. The niece and her brother were only 19 and 18, respectively, and the brother had an extensive criminal history. In addition, the case manager found liquor in the house, despite neither occupant being of age, and no food in the refrigerator. Although the niece claimed that the problems had been remedied, she never contacted the case manager for a third study.
 

 Based upon the evidence presented, the trial court entered an extensive order terminating the parents’ rights. The court found that the parents had engaged in conduct towards the child that demonstrated that continuing involvement of the mother and father would threaten the child’s safety, irrespective of the provision of services, that they had failed to substantially comply with the case plan, and that they had abandoned the child. No love, affection or emotional tie between the mother, father, and child was apparent. It found no other suitable custody arrangements were available. The court found it to be in the child’s best interests to return to the foster parents, with whom she had lived since birth. The mother and father both appeal this ruling.
 

 The mother argues three points on appeal. First, she claims that she was not provided with adequate services prior to the termination of her parental rights, because she was not given a psychiatric evaluation. Second, she claims that DCF could not prove that she failed to comply with her case plan where she completed all the tasks, and no new case plan was offered. Third, she argues that DCF failed to prove that she abandoned the child when the court prevented all contact between her and the child as a result of her conviction for child abuse. The father argues that the court erred in determining that termination was the least restrictive means to protect the child where a relative placement was available. We reject all claims.
 

 Section 39.806(l)(c), Florida Statutes, provides grounds for termination of parental rights:
 

 (c) When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services.
 

 The mother argues that she was not provided adequate services, because she was not given a psychiatric evaluation. DCF knew she was bipolar, had attempted suicide before reunification, and had expressed a need for help in the areas of stress and anger management. Fifteen days prior to reunification, a program manager for Hibiscus Children’s center had noted that the mother might need a mental health referral. Rather than having her evaluated by a mental health provider, DCF instead reunified her with the child, providing only in-home parenting.
 

 DCF must not only establish a ground for termination of parental rights but must also show a continuing risk to the child.
 
 See C.B. v. Dep’t of Children & Families,
 
 874 So.2d 1246, 1253 (Fla. 4th
 
 *351
 
 DCA 2004) (quoting
 
 F.L. v. Dep’t of Children and Families,
 
 849 So.2d 1114, 1122 (Fla. 4th DCA 2008),
 
 reversed on other grounds,
 
 880 So.2d 602 (Fla.2004)).
 
 “
 
 ‘This means that [DCF] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.’ ”
 
 Id.
 
 (quoting
 
 F.L.,
 
 849 So.2d at 1121).
 

 The mother cites
 
 V.M. v. Department of Children and Families,
 
 922 So.2d 1085 (Fla. 4th DCA 2006), in support of her contention that DCF did not provide reasonable services, but that case is distinguishable. There, we held that a father’s rights could not be terminated without reasonable attempts being made to rehabilitate him. The father had been incarcerated, and DCF never prepared a formal case plan nor made contact with him during incarceration, even though after his release the father began regular visits to his child.
 

 In contrast, in the present case the mother did receive a case plan and various treatments, including an evaluation by a mental health provider. A mental health counselor sent a letter stating that there was no need for a separate psychiatric evaluation because one had been done as part of her drug treatment. The mother admits that she completed the substance abuse treatment, including anger management, batterer’s intervention, and women’s support counseling sessions. The case manager testified that she was of the opinion that “no services can correct the mother’s behavior.” Although some evidence adduced by the mother indicated that she might have needed additional mental health counseling, other evidence indicated that she did not. The trial court was in the best position to determine the issue, and competent substantial evidence supports the finding that DCF made reasonable and good faith efforts to rehabilitate the mother.
 

 The mother also complains that the court erred in terminating her parental rights on the ground that she had failed to substantially complete her case plan. Section 39.806(l)(e), Florida Statutes, allows for termination of parental rights where a case plan has been filed for a parent, and the child continues to be abused by the parent. Failure to substantially comply with the case plan constitutes evidence of continuing abuse.
 
 Id.
 
 The mother asserts that she complied with all of her case plan tasks prior to reunification. However, while she had completed most of her tasks prior to reunification, she still had to complete the in-home parenting course after reunification. During that time, the instructor observed that she did not understand parenting and could not apply the skills and information she had been taught. The instructor refused to provide her with a certificate of completion. Moreover, less than three months after reunification and prior to completion of the in-home parenting, she abused the child, thus showing that she had not successfully and substantially completed her tasks.
 

 We disagree with the mother’s assertion that simply accepting the in-home instruction was sufficient to complete the case task, where the in-home instructor determined that she did not apply those teachings. Based upon the mother’s logic, she could have completed drug treatment by attending counseling sessions, yet still be on drugs, and the court would have to conclude that she had substantially complied with her plan. Here, while the in-home instructor came and tried to help the mother understand how to parent, the mother failed to understand or apply the lessons and physically abused her child. That can hardly constitute substantial
 
 *352
 
 completion of a case plan designed to reunite mother and child in a safe environment. Competent substantial evidence supports the trial court’s conclusion that the mother did not successfully and substantially complete her case plan.
 

 The court also found that the mother had abandoned the child, but the mother argues that after the second removal, the disposition of her criminal charges prevented her from contacting the child. The trial court found abandonment, because the mother had not even inquired into the welfare of the child after the second removal. We agree.
 

 Section 39.01(1), Florida Statutes (2009), defines “abandonment” as:
 

 [A] situation in which the parent or legal custodian of a child ... while being able, makes no provision for the child’s support and has failed to establish or maintain a substantial and positive relationship with the child. For purposes of this subsection, “establish or maintain a substantial and positive relationship” includes, but is not limited to, frequent and regular contact with the child through frequent and- regular visitation or frequent and regular communication to or with the child, and the exercise of parental rights and responsibilities. Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child.... The incarceration of a parent, legal custodian, or caregiver responsible for a child’s welfare may support a finding of abandonment.
 

 In
 
 M.A. v. Department of Children and Families,
 
 814 So.2d 1244 (Fla. 5th DCA 2002), the court found sufficient evidence of abandonment where a father had left his children in foster care and failed to visit or even inquire of the foster parents or DCF as to their welfare. Similarly, in this case the court found the mother’s lack of interest in her child and failure to even inquire as to her welfare constitutes abandonment under the statute. We agree. Particularly in the case of small children where time is “of the essence” in their development, a parent who fails to support or to maintain any relationship for extended periods of time can be said to have abandoned his or her child. The mother evinced no interest in her child once the child was removed for the second time.
 

 In re T.B. (J.T. v. Dep’t of Children and Family Services),
 
 819 So.2d 270 (Fla. 2d DCA 2002), upon which the mother relies, is distinguishable. There, an incarcerated father, who first learned he had a child while in prison, requested photos of the child from DCF and attempted to maintain contact with the child. However, DCF never told him how to contact T.B. and thwarted his attempts to have his relatives visit the child. DCF attempted to terminate his rights just prior to his release from prison, and the appellate court found that DCF had not proven abandonment of the child. Unlike this mother, the father in
 
 T.B.
 
 had made attempts to contact the child which were essentially prevented by DCF. In other words, the father had shown interest in his child and in being a parent. Here, after the second removal the mother did not show interest in her child or in being a parent.
 

 Finally, the father in this case argues that DCF failed to prove that termination was the least restrictive means of protecting the child from harm where the father’s relatives were available to care for the child. To terminate parental rights, the Department of Children and Families must establish: 1) the existence of one of the statutory grounds in Chapter 39; 2) that termination is in the child’s best interest; and 3) that it is the least restrictive
 
 *353
 
 means of protecting the child from harm.
 
 J.J. v. Dep’t of Children and Families,
 
 886 So.2d 1046, 1048-49 (Fla. 4th DCA 2004).
 

 The mere fact that a relative is available for placement does not mean that DCF cannot prove that termination is the least restrictive means of protecting the child.
 
 See Guardian Ad Litem Program v. T.R.,
 
 987 So.2d 1269 (Fla. 1st DCA 2008) (explaining that under section 39.810(1), Florida Statutes, the availability of a nonadoptive placement with a relative could be considered, but could not be given greater weight than any other factor, as the focus should be on the best interests of the child);
 
 N.S. v. Dep’t of Children and Families,
 
 36 So.3d 776, 779 (Fla. 3d DCA 2010) (“The existence of possible placement with a relative is irrelevant to the least restrictive means test, where DCF made reasonable efforts to rehabilitate the Mother....”).
 

 In this case, the father had failed to complete his own case plan. Although he requested placement with his niece, the father’s niece was not deemed to be a suitable placement for the child. While she had passed a home study, she then moved in with her brother, and that was not a suitable environment for the child. The niece stated that she had corrected the deficiencies but never contacted DCF to request an additional study. Considering the age of the niece, her inappropriate choice to move in with a brother with an extensive criminal history, and the presence of alcohol in the home, it is easy to see how the court could consider such a placement insufficient to protect the child from further harm. While the court is required to consider the least restrictive means, the least restrictive means test is not intended “to preserve a parental bond at the cost of a child’s future.”
 
 Dep’t of Children and Families v. B.B.,
 
 824 So.2d 1000, 1009 (Fla. 5th DCA 2002).
 

 Moreover, the child had been living with the foster parents since the child was born, except for the 11-week period of time she was reunified with the mother. The foster parents had established a bond with the child and wanted to adopt her. Thus, the long-term placement with the father’s relative was not in the child’s best interest. Competent substantial evidence supports the trial court’s rulings.
 

 For the foregoing reasons, we affirm the termination of parental rights of both the father and the mother.
 

 POLEN and LEVINE, JJ., concur.