687 So.2d 924 (1997)
In the Interest of E.L.H., Jr., a child.
Ervin Lee HUTSON, Sr., Appellant,
v.
STATE of Florida, Appellee.
No. 95-04711.
District Court of Appeal of Florida, Second District.
February 5, 1997.
*925 J.L. "Ray" LeGrande of LeGrande & LeGrande, P.A., Fort Myers, for Appellant.
Steven L. Studybaker, Fort Myers, for Appellee.
CAMPBELL, Acting Chief Judge.
Appellant/Father challenges the order terminating his parental rights to his minor son, E.L.H., Jr., who is now approximately four years old. The court terminated the Father's parental rights, finding that it was in the child's best interest to do so since the Father had not successfully completed his case plan and since the child had "grown into" his foster family. We conclude that the court improperly based termination of the Father's parental rights on the Father's failure to comply with his case plan since the court also found that the Father did not have the ability, due to his incarceration, to comply with the case plan. Accordingly, we reverse and remand for further proceedings.
These proceedings began when HRS filed a dependency petition alleging that E.L.H. was at substantial risk of neglect due to the Mother's substance abuse problem and the Father's willingness to allow E.L.H. to live in an environment that caused, or was in danger of causing, E.L.H.'s physical, emotional or mental health to be impaired. The Protective Supervision Case Plan, filed two months later, on March 10, 1994, required both parents to: (1) Complete a drug abuse program and follow any recommendations through May 1994; (2) submit to random drug screens through May, 1994; (3) provide a safe environment and stable income for at least six months; and (4) remain drug free. The Father signed that plan.
The record shows that by August 1994, five months after the case plan was filed, the Father was incarcerated. Approximately eight months later, in April 1995, HRS moved to terminate the Father's parental rights, alleging that he had failed to comply with his case plan and had abandoned E.L.H. by failing to communicate with him, by not attempting to visit with E.L.H. and by not providing for E.L.H.'s support.
At the adjudicatory hearing in October 1995, a default was entered against the Mother for her failure to appear. The hearing proceeded on the Father's parental rights. Following the presentation of evidence, the court entered an order terminating the Father's parental rights, finding that while the Father's incarceration had prevented the Father from complying with the case plan, it was in the child's best interests to terminate the Father's parental rights. The court found that the Father was not "significantly a part of the child's life" before the Father was incarcerated, that the child had developed a close bond with his foster siblings, and that the existence of quasi-mitigating circumstances (presumably, the Father's incarceration) did not alter the fact of noncompliance and the fact that the child had "grown into" another family.
In its oral findings, the court also found that HRS had made a prima facie case against the Father. It is evident from the court's oral findings that the court based its decision to terminate the Father's parental rights on what it considered to be the manifest best interests of the child, as revealed by the Father's noncompliance with the plan and the child's close bonds with the foster siblings and parents.
The court's reasoning here was flawed. Where a court is terminating parental rights based on a parent's failure to comply with a case plan or a performance agreement, it is axiomatic that the parent must have the substantial ability to comply with the plan or agreement. The court here specifically found that the Father had not had *926 the ability to comply with the plan, but concluded that the manifest best interests of the child outweighed that impediment. This was error.
Under the applicable 1993 version of the statutes, the court must find that it is in the manifest best interests of the child to terminate parental rights and it must find, under the circumstances here, that the parent was offered a case plan and failed to substantially comply with it. §§ 39.464 and 39.467, Fla. Stat. (1993). While the court here concluded that termination of the Father's parental rights was in the manifest best interests of the child, it also found that the Father did not have the ability to comply with the plan and so did not substantially comply with it. Therefore, the facts as found by the court do not support termination of the Father's parental rights.
Accordingly, we reverse and remand with instructions to the court that it allow the Father the opportunity to comply with the plan and that, following the six-month period allowed by statute (§ 39.464, Fla.Stat.(1993)), if the Father has not complied with the plan, and if the other statutory requirements for termination of parental rights are met, termination proceedings may proceed. Parental rights may not be terminated for lack of compliance where compliance is not possible. The law does not make such unreasonable demands. See Collucci v. Dep't of HRS, 664 So.2d 1142 (Fla. 4th DCA 1995).
LAZZARA and WHATLEY, JJ., concur.