819 So.2d 270 (2002)
In the Interest of T.B., a child.
J.T., Appellant,
v.
Department of Children And Family Services, Appellee.
No. 2D01-753.
District Court of Appeal of Florida, Second District.
June 28, 2002.
*271 J.L. "Ray" LeGrande of LeGrande & LeGrande, P.A., Fort Myers, for Appellant.
William Byrne Isaacs, Port Charlotte, for Appellee.
KELLY, Judge.
The appellant, J.T., challenges the final order terminating his parental rights to his son, T.B. We reverse.
T.B. was born on February 14, 1997. In May 1998, T.B.'s mother identified J.T. as one of several potential fathers. The Department of Children and Family Services (the Department) waited until the middle of 1999 to perform the statutorily mandated "diligent search" to locate T.B.'s father.[1] In 1999, J.T. was serving a five-year prison sentence with a tentative release date of mid-2001. He had been incarcerated since 1996.
When the Department located J.T., it told him about T.B., asked his intentions as to the child, and asked him to sign a surrender. J.T. refused, told the Department that he wished to seek custody of T.B., and suggested a relative for placement of the child. After a paternity test, J.T. was adjudicated to be T.B.'s father on March 27, 2000. By then, the Department had already prepared a case plan for J.T. with a goal of adoption. The case plan required no tasks of J.T. The Department also started a home study of J.T.'s cousin for foster care; however, the Department never completed the study. Meanwhile, the court terminated the mother's parental rights and placed T.B. first with his grandmother and then in a foster home with his half-sisters. The foster parents did not intend to adopt T.B.
In its petition to terminate J.T.'s parental rights, the Department alleged three grounds for termination: failure to comply with a case plan, conduct threatening the life or well-being of a child, and incarceration. In its order terminating J.T.'s parental rights, the trial court found that the Department had proved each ground for termination. The trial court also found that termination was in T.B.'s best interest.

Failure to comply with a case plan
Section 39.806(1)(e), Florida Statutes (2000), provides for termination of parental rights when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents. We agree with J.T. that the trial court erred in terminating his parental rights under this provision for failure to substantially comply with the *272 requirements of his case plan. This section only applies when a parent has been provided with a case plan with a goal of reunification. J.R. v. Dep't of Children & Families, 787 So.2d 875 (Fla. 2d DCA 2001). We also note that T.B. was never declared dependent as to J.T., which is also a prerequisite to termination under this provision. M.A. v. Dep't of Children & Families, 814 So.2d 1244 (Fla. 5th DCA 2002). Further, because J.T. had no tasks to complete under the case plan he was given, there was no factual basis to find that he failed to substantially comply with the plan.

Conduct threatening the life or well-being of the child
Section 39.806(1)(c) provides for termination when a parent has engaged in conduct toward the child that demonstrates that the continuing involvement of the parent in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. The trial court terminated J.T.'s parental rights under this section based on its conclusion that J.T. had abandoned and neglected T.B. while he was incarcerated.
The record does not support this conclusion. J.T. did not know he had a child until his son was almost three years old. After he learned about T.B., he repeatedly requested photographs of T.B. from the Department. He also attempted to maintain contact with the Department and establish communication with T.B.; however, the Department never told him how to contact T.B. The Department also thwarted his attempts to have his relatives visit T.B. At the termination hearing, J.T. testified that he had no income to provide financial support to T.B. while he was incarcerated, but that he would be out of prison within months and he had several employment opportunities available to him when he was released. He had arranged to live with his grandmother and was willing to work to support and care for his son.
This evidence is insufficient to prove that J.T. wilfully neglected or abandoned his son. Rather, it demonstrates that his failure to support his son and assume parental duties was entirely due to his incarceration. A parent's criminal history and incarceration are factors the court may consider in deciding whether to terminate parental rights on the ground of abandonment. M.S. v. D.C., 763 So.2d 1051 (Fla. 4th DCA 1999). However, incarceration alone is insufficient grounds to terminate parental rights on the grounds of abandonment. W.T.J. v. E.W.R., 721 So.2d 723 (Fla.1998); W.W. v. Dep't of Health & Rehabilitative Servs., 498 So.2d 946 (Fla.1986). It is also improper to terminate parental rights if a parent is unable to financially provide for the child or to assume parental obligations due to incarceration. E.L.H. v. State, 687 So.2d 924 (Fla. 2d DCA 1997).

Incarceration
The Department also sought termination based on section 39.806(1)(d).[2] J.T. correctly argues, and the Department concedes, *273 that the trial court erred in applying subsection 39.806(1)(d) to this case because J.T. began his incarceration before the statute became effective.[3]See D.B. v. Dep't of Children & Families, 791 So.2d 1225 (Fla. 5th DCA 2001) (holding that section 39.806(1)(d) did not apply to a parent who had already started serving his prison sentence prior to the effective date prescribed by statute).

Manifest best interest of the child
J.T. also challenges the trial court's finding under section 39.810, Florida Statutes (2000), that termination was in the manifest best interest of T.B. Finding that termination is in the manifest best interest of the child is an essential predicate for the termination of parental rights. J.L.C. v. Dep't of Children & Family Servs., 750 So.2d 38 (Fla. 2d DCA 1999). We agree that the trial court's findings under section 39.810 were flawed.
In considering whether termination is in the best interest of a child, section 39.810 requires the trial court to consider, among other things, whether there is any suitable permanent custody arrangement with a relative of the child. The trial court erroneously found that there was no suitable permanent custody arrangement with a relative. The record reflects that J.T. asked the Department to place T.B. with his cousin. J.T.'s cousin completed the foster parent training and was willing to adopt T.B. The Department had begun a home study and background check of the cousin for foster care, but inexplicably changed its focus to adoption rather than relative placement and abandoned the study. The Department offered no explanation for failing to complete the study. The record reflects that the Department's background check and initial interview revealed no negative information which might have precluded further investigation. Accordingly, the record does not support the trial court's finding.
The trial court also found that J.T. lacked the capacity to care for T.B. Contrary to what the court found, the Department counselor testified that "I don't think anyone knows at this point" whether J.T., after he is released from custody, would be able to care for T.B. She testified that she had never spoken to J.T. and that based solely on his criminal history, she had assumed that J.T. would not be a capable parent. It was improper for the trial court to rely on these unsupported assumptions in making its finding. See R.W.W. v. Dept. of Children & Families, 788 So.2d 1020, 1024 (Fla. 2d DCA 2001).
We reverse the final order terminating J.T.'s parental rights and remand for further proceedings. On remand the court must determine under section 39.806(1) whether J.T.'s current situation warrants termination or whether the Department should provide him with a case plan with a goal of reunification. If the Department again petitions to terminate J.T.'s parental rights, the court should carefully consider the possibility of relative placement as the least restrictive means of protecting T.B. from harm.
Reversed and remanded.
BLUE, C.J., and WHATLEY, J., Concur.
NOTES
[1] See § 39.503(5),(6), Fla. Stat. (1997).
[2] Section 39.806(1)(d), Florida Statutes (1999), states that parental rights may be terminated on the basis that a parent of the child is incarcerated in a state or federal correctional institution, and either (a) the period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of eighteen years, (b) the incarcerated parent has been determined by the court to be a violent career criminal, a habitual violent felony offender, a habitual felony offender, a sexual predator, or has been convicted of first or second degree murder, or a sexual battery that constitutes a capital life, or first degree felony, or has been convicted of a substantially similar offense in another jurisdiction, or (c) the court determines by clear and convincing evidence that continuing the parental relationship with the incarcerated parent would be harmful to the child.
[3] Subsection 39.806(1)(d) was originally numbered section 39.464(1)(d), Florida Statutes (1997), and took effect on October 1, 1997. See ch. 97-226 § 6, Laws of Fla.