CANADY, Judge.
Y.W., the mother, challenges a judgment terminating her parental rights to her male child, L.B.W. Because we conclude that the judgment was based on an unsupported factual finding, we reverse.
L.B.W., who was born in September 2000, was sheltered at birth by the Department of Children and Family Services (DCF) and was adjudicated dependent on October 30, 2000. The dependency order indicated that L.B.W. was at risk of harm because the mother suffered from mental illness and that, five months prior to L.B.W.’s birth, law enforcement officers discovered the mother rummaging through garbage cans while high on cocaine. When the officers took her into custody at that time, she claimed that voices were telling her to murder her two older children. According to the dependency order, the mother was subsequently committed pursuant to the Baker Act to a treatment facility. The mother was soon released because she refused to take the medication prescribed for her mental disorder and was discovered to be four months pregnant with L.B.W.
The dependency adjudication was also based on the mother’s ongoing substance abuse problems, questionable behavior she exhibited toward L.B.W. after his birth while still in the hospital, indifference toward her two older children who were in the legal care and custody of her mother— with whom she also then resided — and her refusal to become involved in parenting her two older children. Rather than place L.B.W. in the grandmother’s home with the mother and his two older siblings, the trial court determined, without explanation, that “[cjontinuation of the child in his home [was] contrary to his welfare” and that “[i]t was in the best interests of the child to remain out of his home.” L.B.W. *482 was thus placed in foster care, and the mother was required to comply with a case plan with a goal of reunification or adoption by September 30, 2001.
On August 17, 2001, DCF filed its petition for termination of parental rights alleging that termination was in the best interests of L.B.W. As grounds for termination, DCF relied on section 39.806(l)(c), Florida Statutes (2000) — “the parent ... engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent ... in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services” — and section 39.806(l)(e) — “a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents.” The petition alleged, among other things, that there was no suitable placement for the child with a relative.
On December 6, 2002, after an adjudicatory hearing, the trial court entered a final order terminating the mother’s parental rights. The trial court determined there were grounds for termination based on evidence that the mother’s mental condition and substance abuse problems were interfering with her ability to parent and that she was neglecting L.B.W. The trial court also found that termination was in the manifest best interests of the child because “[t]he maternal grandmother is of failing health and as such there is no suitable relative with whom said child might be placed.”
On appeal, the mother’s challenge to the judgment terminating her parental rights is based on the claim that various factual findings which served as the basis for termination were unsupported by clear and convincing evidence. We find merit only in the mother’s challenge to the trial court’s determination that there was no suitable placement for L.B.W. with a relative.
Section 39.802(4) sets forth the elements required for termination of parental rights, providing in pertinent part:
A petition for termination of parental rights filed under this chapter must contain facts supporting the following allegations:
(a) That at least one of the grounds listed in s. 39.806 has been met.
[[Image here]]
(c) That the manifest best interests of the child, in accordance with s. 39.810, would be served by the granting of the petition.[1]
Section 39.810 requires that in “determining the manifest best interests of the child, the court shall consider and evaluate all relevant factors, including, but not limited to” the various specific factors enumerated in the section. Among the specific enumerated factors the trial court must consider is whether there is “[a]ny suitable permanent custody arrangement with a relative of the child.” § 39.810(1).
Section 39.809(1) provides that “[ejach of [the elements required for termination] must be established by clear and convincing evidence before the petition is granted.” An order terminating parental rights therefore must be supported by clear and convincing evidence both that there is a ground for termination under *483 section 39.806 and that termination is in the manifest best interests of the child pursuant to section 39.810. See E.E.A. v. Dep’t of Children & Family Servs., 846 So.2d 1250, 1251-52 (Fla. 2d DCA 2003) (citing In re C.W.W., 788 So.2d 1020 (Fla. 2d DCA 2001) (“To grant a petition to terminate parental rights, the trial court must find that the Department proved the allegations supporting the termination of parental rights by clear and convincing evidence.”)).
Beyond these statutory requirements, the termination of parental rights is subject to a constitutional requirement: “[Bjecause parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm.” Padgett v. Dep’t of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991).
In the instant case, the trial court correctly determined there was clear and convincing evidence that at least one of the grounds for termination under section 39.806 existed. The trial court’s error here relates to its evaluation of the manifest best interests of the child pursuant to section 39.810. In particular, the record before us does not contain clear and convincing evidence to support the trial court’s finding that because of the grandmother’s alleged “failing health” there was no suitable relative placement for the child. The grandmother, who is sixty-two years old and who wants to care for L.B.W., testified at the adjudicatory hearing that she suffers from diabetes but that her condition is under control. She further testified that her health is good, that she could care for a two-year-old, and that it would not be a hardship for her to do so. Given the grandmother’s unrebutted testimony concerning the status of her health, there was no evidence — let alone clear and convincing evidence — to support the trial court’s finding that the “grandmother is of failing health.” The trial court’s determination that no suitable relative placement was available for the child thus was based on an unsupported factual finding concerning the grandmother’s health.
Accordingly, the judgment terminating V.W.’s parental rights is reversed and this cause is remanded for further proceedings. On remand, the trial court shall consider and evaluate “all relevant factors” concerning the manifest best interests of the child as required by section 39.810 — including the existence of “[a]ny suitable permanent custody arrangement with a relative of the child” — and shall base its ruling only on facts that are established by clear and convincing evidence.
Reversed and remanded.
COVINGTON and WALLACE, JJ., concur.

. Requirements not at issue in this case are set forth in section 39.802(4)(b): "That the parents of the child were informed of their right to counsel at all hearings that they attended and that a dispositional order adjudi-eating the child dependent was entered in any prior dependency proceeding relied upon in offering a parent a case plan as described in s. 39.806.”