51 So.3d 1224 (2011)
In the Interest of C.N., M.N., and D.N., children.
M.N., Appellant,
v.
Department of Children and Family Services and Guardian Ad Litem Program, Appellees.
No. 2D10-2086.
District Court of Appeal of Florida, Second District.
January 14, 2011.
*1225 Norman A. Palumbo, Jr., Tampa, for Appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and David J. Lopez, Assistant Attorney General, Tampa, for Appellee Department of Children and Family Services.
Jennifer S. Paullin, Tavares, for Appellee Guardian ad Litem Program.
WALLACE, Judge.
M.N. (the Father) appeals the trial court's order terminating his parental rights to his three children, C.N., M.N., and D.N., based on the material breach of a case plan under section 39.806(1)(e)(2), Florida Statutes (2008).[1] The Father breached case plan tasks requiring him to commit no further law violations and to avoid further involvement in crimes of violence. Although the Father was imprisoned for four years, the Department of Children and Family Services (DCF) did not seek to terminate the Father's parental rights under section 39.806(1)(d) relating to parents who are incarcerated.
We are asked to decide whether the commission of no new law violations constitutes a valid case plan task and may support termination of the Father's parental rights when his imprisonment resulting from a new law violation made it impossible for him to complete his other case plan tasks within the allotted time. We conclude that the statutory scheme for the termination of parental rights makes section 39.806(1)(d) the exclusive method for *1226 the termination of parental rights based on the fact of a parent's incarceration. In addition, the Father did not commit any of the crimes for which the termination of parental rights is authorized under subsections 39.806(1)(g) and (1)(h). For these reasons, we reverse the circuit court's order and remand for further proceedings.

I. THE FACTS AND PROCEDURAL BACKGROUND
The children were sheltered on February 28, 2009. On that date, C.N. was four years old, M.N. was two, and D.N. was four months. DCF alleged in its probable cause affidavit that the parents were incarcerated and the children were left without a caregiver. The Father was subsequently released from jail, but the children's mother remained incarcerated. DCF filed a petition for dependency on April 13, 2009. The Father consented by default, and a case plan was approved on April 22, 2009.
The Father had been arrested at least twelve times since 2002 for such crimes as battery, firing a weapon into a building, aggravated assault, burglary, and resisting arrest. The case plan noted that the Father had an extensive history of violent crime and domestic violence. The case plan tasks assigned to the Father included (1) no further law violations; (2) no further involvement in crimes of violence; (3) a domestic violence assessment and completion of a domestic violence program; (4) anger management assessment and class; (5) substance abuse evaluation and treatment, if ordered; (6) financial stability; and (7) stable housing for six months prior to reunification. The target date for completion of the case plan was January 4, 2010.
The Father promptly began taking steps to comply with his case plan. He obtained referrals and went to the necessary evaluations. The substance abuse evaluation resulted in a recommendation of no treatment. As a result of the anger management and domestic abuse evaluation, the Father was required to attend a domestic violence program. He began the program, but he did not complete it because he was arrested for the commission of a new crime. The Father claims that he maintained stable employment. But the Father's compliance with this case plan task was disputed at trial because he offered no evidenceother than his own testimony that he actually had stable employment. The Father's case manager testified that she had made several requests for pay stubs but that the Father had never complied. The case manager also testified that the Father had never provided her with evidence that he had obtained stable housing, although he insisted that he did have stable housing. The case manager had never visited the Father's stated residence because it was in a high-crime area.
In June 2009, the Father was arrested again for contributing to the delinquency of a minor, aggravated assault with a deadly weapon, and aggravated battery on a pregnant woman. He was convicted on the latter two charges and sentenced to four years in prison. The State apparently dropped the charge of contributing to the delinquency of a minor.
On September 2, 2009, DCF filed a petition seeking the termination of the Father's parental rights. DCF alleged that the Father's new crimes and resulting imprisonment constituted a material breach of his case plan, "making it unlikely that he will be able to substantially comply with his case plan within the one-year period mandated by the Florida Legislature."[2],[3] *1227 The trial court agreed. In its order, the trial court made the following finding of fact:
At the time of the [F]ather's incarceration, he was not substantially compliant with his case plan. The court notes that the [F]ather's case plan contains two tasks that address no further law violations: the no further law violations task and the no further involvement in crimes of violence. The Father has failed to comply with both of these tasks and now finds himself in prison until late 2012 or early 2013. The [F]ather is unable to complete his case plan in prison.
Based on this finding, the trial court concluded that grounds existed for termination of the Father's parental rights based on noncompliance with his case plan tasks:
Pursuant to Florida Statute 39.806(1)(e)(2) (2009), the child has been adjudicated dependent, a case plan has been filed with the Court, and the [F]ather has materially breached the case plan by making it unlikely that he will be able to substantially comply with the case plan before the time for compliance expires. The [F]ather's failure to substantially comply was not due to either the lack of financial resources of the [F]ather or to the failure of [DCF] to make reasonable efforts to reunify the [F]ather and child[ren].
Thus the trial court granted DCF's petition and terminated the Father's parental rights to his three children. This appeal followed.

II. DISCUSSION

A. Incarceration Under Section 39.806(1)(d)
Section 39.806(1)(d) establishes three separate grounds upon which a court may terminate the parental rights of a parent incarcerated in a state or federal correctional institution:
1. The period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years;
2. The incarcerated parent has been determined ... to be a violent career criminal as defined in s. 775.084, a habitual violent felony offender as defined in s. 775.084, or a sexual predator as defined in s. 775.21; has been convicted of first[-]degree or second[-]degree murder in violation of s. 782.04 or a sexual battery that constitutes a capital, life, or first[-]degree felony violation of s. 794.011; or has been convicted of an offense in another jurisdiction which is substantially similar to one of the offenses listed in this paragraph....
3. The court determines by clear and convincing evidence that continuing the parental relationship .. . would be harmful to the child and ... that termination of the parental rights of the incarcerated parent is in the best interest of the child.
In the Father's case, none of the three grounds relating to incarcerated parents *1228 applies. First, the Father will be incarcerated for no more than four years. With gain time, he may be released from prison as early as September 2012. The oldest of the three children will only be eight years old at that time, leaving more than ten years before the oldest child reaches the age of eighteen. Under these circumstances, the trial court could not terminate the Father's parental rights on the statutory ground that the period of his incarceration would constitute a substantial portion of the children's lives. See B.C. v. Fla. Dep't of Children & Families, 887 So.2d 1046, 1052 (Fla.2004). Second, the Father does not qualify as a violent career criminal, a habitual violent felony offender, or a sexual predator, and he has not been convicted of first- or second-degree murder or sexual battery. Third, the trial court did not find that continuing the parental relationship with the Father would be harmful to the children. So the termination of the Father's parental rights because of his incarceration under section 39.806(1)(d) was not an option. Perhaps for this reason, DCF did not rely on section 39.806(1)(d) in its petition for the termination of the Father's parental rights.
The trial court emphasized that the basis for its findings under section 39.806(1)(e)(2) was the Father's commission of a new violent crime, not the resulting incarceration. The Father acknowledges this fact in his brief, but he argues that the trial court inappropriately considered the length of the incarceration as a factor. In fact, the trial court did consider the length of the Father's incarceration to be an issue in the case. At the hearing, the trial court pointedly noted that by the time of the Father's release, he would have been incarcerated for over half of the oldest child's life and for almost the entirety of the younger two children's lives. Nevertheless, the trial court grounded its decision to grant the petition on a material breach of the case plan, not the length of the Father's incarceration.

B. The Material Breach of a Case Plan Under Section 39.806(1)(e)(2)
The inapplicability of section 39.806(1)(d) brings us to the issue of whether the Father's parental rights could properly be terminated for material breach of his case plan under section 39.806(1)(e)(2). In the few months between his release from jail and his rearrest for the aggravated battery, the Father was actively taking steps to comply with his case plan. Thus the Father's appeal poses two closely related questions: First, may a case plan contain as a specific task that a parent commit no violation of the law? Second, if so, and a parent commits a law violation resulting in imprisonment and a consequent inability to complete the case plan, may a court terminate the parent's parental rights based on a material breach of the case plan for this reason alone? We turn now to an examination of these questions.
When a child has been adjudicated dependent and a case plan has been filed with the court, section 39.806(1)(e) permits a court to terminate a parent's parental rights in two separate circumstances. First, under section 39.806(1)(e)(1), a court may terminate a parent's parental rights if the child continues to be abused, neglected, or abandoned by the parent or parents. The failure to comply with a case plan within the allotted time constitutes evidence of continuing abuse, neglect, or abandonment:
The failure of the parent or parents to substantially comply with the case plan for a period of 9 months after an adjudication of the child as a dependent child or the child's placement into shelter care, whichever occurs first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially *1229 comply with the case plan was due to the parent's lack of financial resources or to the failure of the department to make reasonable efforts to reunify the parent and child.
Id. Second, under section 39.806(1)(e)(2), a court may terminate a parent's parental rights for a material breach of the case plan. Under the statute, in order to prove a material breach of the case plan, "the court must find by clear and convincing evidence that the parent or parents are unlikely or unable to substantially comply with the case plan before time to comply with the case plan expires." Id.

C. The Father's Progress on His Case Plan
In this case, DCF and the trial court relied on section 39.806(1)(e)(2) relating to a material breach of the case plan as the ground for the termination of the Father's parental rights. The Father's case plan had been in effect for, at most, three months when he was rearrested. Before the arrest, the Father was in compliance. The case manager testified that the Father had been making progress on his case plan up to the time that he was rearrested. She also commented with approval concerning the Father's supervised visits with his children.[4]
After the Father went to prison, he was unable to make any further progress on his case plan. Nevertheless, the Father wrote to the case manager frequently. He explained that he was attempting to get services while he was in prison but that the appropriate services were not available at the facility where he was confined. The Father also advised the case manager that he might be eligible for a transfer to a different facility where the necessary services would be available but that obtaining such a transfer could take up to one year. The Father also regularly wrote letters to his children.

D. The No-New-Law-Violation Requirement as a Case Plan Task
The insertion of a task into a case plan requiring no new law violations or violations of probation or community control is not novel; but such tasks are not in general use either. Several reported Florida decisions mention the presence of such tasks in a case plan. See, e.g., M.A.L. v. Dep't of Children & Family Servs., 812 So.2d 447, 447-48 (Fla. 2d DCA 2002) (noting that the parent's case plan required him to have no new law violations and to comply with all terms of his probation); B.B. v. Dep't of Children & Families, 13 So.3d 183, 185 (Fla. 5th DCA 2009) (affirming termination of parental rights where the parent "failed to substantially comply with [the case plan's] terms by failing to follow through with substance abuse treatment, failing to maintain appropriate housing and employment, being convicted of several new law violations during the pendency of the proceeding, and testing positive for drugs"); T.C. v. Dep't of Children & Families, 961 So.2d 1060, 1061-62 (Fla. 4th DCA 2007) (citing new law violations and violations of probation as contributing factors supporting a finding that a parent had materially breached her case plan); K.J. v. Dep't of Children & Family Servs., 906 So.2d 1183, 1184 (Fla. 4th DCA 2005) (noting that the case plan included a task requiring the parent to refrain from committing new law violations and comply with the terms of her probation but concluding that DCF had failed to establish by clear and convincing evidence *1230 that the parent had failed to substantially comply with the case plan).
Here, the specific tasks requiring no new law violations and no involvement in crimes of violence were incorporated into the Father's case plan because of his history of violent acts and domestic violence. So one might view these case plan tasks at least in partas an attempt to protect the children from being left again without a caretaker as a result of subsequent incarcerations. The case manager offered the following explanation for the insertion of these tasks into the case plan:
The reason was [that] ... the children were brought into shelter due to the domestic violence and then also after looking at his background history with his involvement in ... violent crimes. We put that specific task in there because it was such an issue in his history.
Drawing on the case manager's perspective, the attorney for the GAL argued in favor of termination of the Father's parental rights based on his breach of these case plan tasks as follows: "[T]he material breach ... which the [F]ather committed by the subsequent offense ... [was] that he fundamentally failed to rectify the circumstances which caused the children to become dependent in the first place...."

E. The Problem: A Collision of Conflicting Concepts
The problem posed by the Father's case stems from a collision of conflicting concepts. Such a collision is likely to occur in this context when the circuit court assigns a requirement to have no new law violations or to comply with the terms of probation or community control as a case plan task and the parent commits a new crime or violates probation or community control, resulting in his or her incarceration. On the one hand, a parent's failure to comply with a case plan within the allotted time constitutes evidence of continuing abuse, neglect, and abandonment. § 39.806(1)(e)(1). On the other hand, incarceration alone is not a ground for the termination of parental rights. See § 39.806(1)(d); V.M. v. Dep't of Children & Families, 922 So.2d 1085, 1087 (Fla. 4th DCA 2006) ("[P]arental rights should not be terminated merely because of the Father's criminal history and incarceration history, without more."); P.S. v. Dep't of Children & Family Servs., 863 So.2d 392, 394 (Fla. 3d DCA 2003). And it is improper to terminate parental rights for case plan noncompliance when the parent's incarceration renders the parent unable to comply. See W.L. v. Dep't of Children & Family Servs., 15 So.3d 866, 869 (Fla. 2d DCA 2009); T.H. v. Dep't of Children & Family Servs., 979 So.2d 1075, 1083 (Fla. 2d DCA 2008); Hutson v. State, 687 So.2d 924, 926 (Fla. 2d DCA 1997).
One might argue that when a circuit court terminates parental rights for the breach of a case plan task requiring no new law violations or compliance with the terms of probation or community control, the parent's incarceration is unrelated to noncompliance with the case plan task. The parent has breached the case plan; incarceration is only a collateral consequence. But this rather abstract view of the matter ignores the opposing principle that parental rights may not be terminated for case plan noncompliance if incarceration is the cause of the parent's inability to comply with the case plan.

F. The J.R. and K.J. Decisions
The parties have not directed our attention to a reported decision that squarely addresses the question presented here, and our independent research has not found such a case either. However, this court's relatively recent decision in J.R. v. Department of Children & Family Services, 923 So.2d 1201 (Fla. 2d DCA 2006), *1231 warrants examination. The Father relied on the J.R. decision in the trial court.
In J.R., the parent's case plan included a case plan task requiring him to follow all conditions of his probation. Id. at 1204. The parent in J.R., like the Father in this case, began to take steps to comply with his case plan, but then he committed a new law violation. Id. at 1205. In J.R., the new law violation that the parent committed was a burglary. Id. Of course, the burglary was a violation of the parent's probation, and he was sent to prison for a five-year term. Id. The only case plan task that the parent failed to complete was the requirement that he have no new law violations. Id. On a termination petition filed by DCF, the trial court terminated the parent's parental rights to his then three-year-old son on four grounds: (1) abandonment, § 39.806(1)(b); (2) continuing involvement of the parent in the parent-child relationship threatening the child irrespective of the provision of services, § 39.806(1)(c); (3) continuing the parental relationship with the incarcerated parent would be harmful to the child, § 39.806(1)(d)(3); and (4) case plan noncompliance, § 39.806(1)(e). 923 So.2d at 1205.
On appeal, this court disapproved the termination of parental rights on all four grounds. Id. at 1208. With regard to case plan noncompliance under section 39.806(1)(e), this court noted that the parent was in substantial compliance with his case plan until his arrest and incarceration. Id. Even after the parent was arrested, he maintained regular written communication with his son. Id. So the facts in J.R. are very similar to the facts in this case.
But in addressing the issue arising from the parent's noncompliance with his case plan task of avoiding new law violations, the J.R. court did not directly address the issue presented here, stating as follows:
At the present time, [the parent] has been unable to comply with the remainder of his case plan or to provide for the child's material needs. However, this is not due to lack of interest or neglect, but because of his incarceration, and therefore, this ground does not support termination. See Hutson v. State (In re E.L.H.), 687 So.2d 924 (Fla. 2d DCA 1997) (holding that the trial court improperly based termination of the father's parental rights on the father's failure to comply with his case plan since the father did not have the ability, due to his incarceration, to comply).
Id. The Fourth District reached a similar conclusion in K.J., 906 So.2d 1183. In K.J., the case plan included a task requiring K.J. to refrain from committing new law violations and to comply with the terms of her probation. Like this court in J.R., the Fourth District reached its conclusion in K.J. without addressing the precise issue raised in this case:
In T.M. v. Department of Children and Families, 905 So.2d 993 (Fla. 4th DCA 2005), we recently held that an incarcerated father's parental rights could not be terminated for failure to comply with his case plan absent a showing that the department made reasonable efforts to assist the father in securing the type of services he would need to substantially comply with his case plan while in prison.
Although the evidence in this case showed that the mother failed to successfully complete the drug program at CRC, the department fell short of establishing by clear and convincing evidence that the mother failed to substantially comply with her case plan. The unrebutted evidence shows that the mother made significant progress towards the goal of drug rehabilitation and demonstrated her amenability to treatment by *1232 remaining drug-free during and after her treatment at CRC. Further, there is no evidence that the mother had the opportunity to obtain drug treatment comparable to that provided by CRC while she was incarcerated. Parental rights may not be terminated for lack of compliance where compliance is not possible.
Moreover, from this record, we cannot say that the mother's ability to fully perform her case plan obligations was not affected by the department's failure to assist her with achieving her goal. Termination of parental rights is not proper if the parent's ability to comply was affected by the department's failure to provide reasonable assistance.
Id. at 1186 (citation omitted). Thus neither J.R. nor K.J. address the issue presented here.
As the J.R. court and the K.J. court recognized, a parent's incarceration alone does not constitute abuse, neglect, or abandonment. Incarceration is merely a factor that the circuit court may consider in determining whether a child has been abandoned. T.H., 979 So.2d at 1080. But the question here is whether the no-new-law-violations requirement may properly be included as a task in the case plan. Unfortunately, none of the appellate opinions in which a case plan task of no new law violations is mentioned shed light on this question.

G. The No-New-Law-Violation Requirement Is Not a Permissible Case Plan Task
We conclude that a requirement that a parent commit no new law violations or that the parent comply with the terms and conditions of probation or community control may not properly be included as a case plan task. The breach of such a task that results in the parent's incarceration is notstanding alonea proper ground for the termination of parental rights. The design of section 39.806 compels this conclusion.
Section 39.806 sets forth a comprehensive and detailed list of twelve separate grounds for the termination of parental rights. Under the statute, a parent's mere commission of a crime is not a ground for the termination of parental rights. The omission of such a ground from the statute is in accord with common sense. A parent's commission of a crime is not directly correlated with poor parenting skills or risk to the child; a person who commits a crime may still be an excellent parent. It all depends on the nature of the crime. A parent's commission of some crimes, e.g., aggravated child abuse, obviously warrants intervention to protect the affected child or children. But the commission of many other crimes may have little to do with the offender's effectiveness as a parent or with the child's welfare.
The scheme of section 39.806 controls and limits the crimes for which a circuit court may terminate the offender's parental rights. As we have seen, under section 39.806(1)(d)(2), a circuit court may terminate the parental rights of an incarcerated parent who qualifies as a violent career criminal, as a habitual violent felony offender, or as a sexual predator. And a circuit court may terminate the parental rights of an incarcerated parent who has committed a first-degree murder, a second-degree murder, or a sexual battery that constitutes a capital, life, or first-degree felony. Id. A parent's commission of aggravated child abuse or sexual battery on a child constitutes grounds for the termination of parental rights without regard to whether the parent is incarcerated. § 39.806(1)(g). Finally, under section 39.806(1)(h), a circuit court may terminate parental rights without regard to incarceration when "[t]he parent or parents have *1233 committed the murder, manslaughter, aiding or abetting the murder, or conspiracy or solicitation to murder the other parent or another child, or a felony battery that resulted in serious bodily injury to the child or to another child."
This review of section 39.806 demonstrates that the statute establishes multiple grounds for the termination of parental rights based either on the parent's status as a recidivist or a sexual predator, or on the parent's commission of certain specifically designated crimes. So a proper interpretation of the statute cannot authorize its expansion to include all criminal conduct as a ground for the termination of parental rights. "When a statute enumerates the things upon which it is to operate, it should be construed as excluding from its operation things of the same class or category which it does not mention." Mingo v. ARA Health Servs., Inc., 638 So.2d 85, 86 (Fla. 2d DCA 1994) (citing James v. Dep't of Corrections, 424 So.2d 826 (Fla. 1st DCA 1982)). It follows that a circuit court may not expand indefinitely the list of crimes for which the termination of parental rights is authorized in the statute by inserting a no-new-law-violation task into the case plan. To approve such a reading of section 39.806 would amount to judicial legislation that is contrary to the separation of powers that characterizes our system of government.
We recognize that several appellate opinions have affirmed the termination of a parent's parental rights in cases involving a case plan task requiring the parent to refrain from committing new law violations. However, the terminations in those cases were supported by other breaches of the parents' case plans under circumstances clearly more egregious than the circumstances presented in this case. But no court has yet been called upon to determineas is the case herewhether a parent's parental rights may be terminated primarily upon a finding that the parent breached a no-new-law-violation case plan task.

H. The Application of the Law to the Facts of this Case
In this case, the circuit court found that the Father had committed a material breach of his case plan. But the Father's breach of the no-new-law-violation task was not sufficient to support the termination of his parental rights. With regard to the Father's alleged breach of the task that he show stable housing and stable income, section 39.806(1)(e)(1) requires at least a nine-month period for compliance. The Father's rearrest occurred during the third month of his case plan. So the Father did not have the benefit of the allotted nine-month period to complete his case plan. The Father's inability to continue his efforts to complete his case plan was primarily the result of his confinement in a facility where the required services were unavailable, not from the incarceration itself. See T.H., 979 So.2d at 1080 ("[T]he parent's efforts, or lack thereof, to assume parental duties while incarcerated must be considered in light of the limited opportunities to assume those duties while in prison."). Under these circumstances, we conclude that DCF failed to present clear and convincing evidence necessary to support the circuit court's finding that the Father had committed a material breach of his case plan under section 39.806(1)(e)(2). Therefore, the circuit court erred in terminating the Father's parental rights to his three children on this ground.

III. CONCLUSION
A case plan under chapter 39 was never intended to be a form of criminal probation. Criminal probation and case plans serve entirely different purposes. The purposes of criminal probation *1234 under chapter 948 are to rehabilitate the criminal offender, to protect the public by deterring further criminal conduct, and to protect the crime victim's rights. See Woodson v. State, 864 So.2d 512, 516 (Fla. 5th DCA 2004). A violation of probation generally results in some form of additional punishment for the offender. § 948.06, Fla. Stat. (2008). In contrast, the purposes of a case plan under chapter 39 are to establish "standards for a parent's legitimate expectation of reconciliation with [his or] her child and for the eventual decision, if one must be made, to terminate parental rights." Brown v. State, 444 So.2d 981, 992 (Fla. 1st DCA 1983) (referring to a "performance agreement," the former term for a case plan). When a circuit court terminates parental rights for any reason, the result is frequently distressing for the parent. But the termination process is not punitive in nature. Rather, "[t]he goal in a termination of parental rights is to get the child in a healthy environment and, preferably, to find adoptive parents." E.T. v. State, Dep't of Children & Families, 930 So.2d 721, 727 (Fla. 4th DCA 2006) (quoting Cosgrove v. Kansas State Dep't of Soc. & Rehab. Servs., 14 Kan.App.2d 217, 786 P.2d 636, 639 (1990)).
The addition of a no-new-law-violation task to a case plan grafts an alien conceptual framework onto the process for dependency and termination of parental rights under chapter 39. Indeed, the increasing use of the no-new-law-violation case plan task threatens to turn the dependency process into a form of criminal probation. Turning the dependency process into a form of criminal probation is not in keeping with either the letter or the spirit of chapter 39. A parent's criminal history and incarceration history is irrelevant to the decision to terminate parental rights, except as specifically provided in the statute. See V.M., 922 So.2d at 1087.
Here, the Father's criminal history and incarceration history did not constitute grounds for the termination of the Father's parental rights under section 39.806. DCF failed to prove by clear and convincing evidence that the Father had materially breached his case plan.[5] Accordingly, we reverse the order terminating the Father's parental rights and remand this case for further proceedings.
Reversed and remanded.
VILLANTI, J., Concurs.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I fully concur in Judge Wallace's thoughtful decision. I write only to note that the "no new law violation" task in a case plan seems to be a response to the supreme court's decision in B.C. v. Florida *1235 Department of Children & Families, 887 So.2d 1046 (Fla.2004). With all due respect to the supreme court, I believe the analysis in B.C. is unlikely to reflect the intent of the legislature and that the legislature should revisit section 39.806(1)(d)(1), Florida Statutes (2010), to determine whether it should clarify the statute.
Section 39.806(1)(d)(1) allows a termination when a parent is "expected to be incarcerated" for "a substantial portion of the period of time before the child will attain the age of 18 years." In B.C., the supreme court relied purely on a linear mathematical formula to determine whether the percentage of the child's minority was substantial. 887 So.2d at 1054. It is quite obvious to anyone who has watched a child's mind develop that child development is not a matter of linear mathematics. In this case, the children have not seen the Father since July 2009, when he was out of prison for a few months and they were five years old, three years old, and one year old, respectively. Assuming that he is control released in 2012, the children will be 8½, 6½, and 4. They will have lived in a foster home for essentially their entire lives. Especially for the two older children, I find it hard to accept from the perspective of child development that the Father will not have been incarcerated for a "substantial portion" of their childhood by 2012.
This case is perhaps the worst case scenario because there is no mother on the outside waiting patiently for the Father's release from prison. She is serving a longer prison sentence and has had the wisdom to allow these children to be placed for adoption in a permanent home. I recognize that the termination of a parent's rights to a child implicates a fundamental liberty interest of the parent under existing case law, but it seems to me that, at some point, children ought to have a fundamental right to a safe, secure, and permanent home. In this case, there is little question that we are providing the Father with his constitutional rights at the expense of the children. An improved statute might allow us to avoid such outcomes in the future.
NOTES
[1] The children's mother, who is serving a lengthy sentence in the federal prison system, has not appealed the order terminating her parental rights.
[2] DCF's reference to "the one-year period" is inaccurate, but it does not affect our analysis. The case plan was correctly established under the recently revised statute, which shortened the period for compliance from one year to nine months. See § 39.806(1)(e)(1); ch. 2008-245, §§ 16, 32, at 2941-42, 2950, Laws of Fla. (effective July 1, 2008).
[3] The petition cites the Father's convictions for aggravated assault with a deadly weapon and aggravated battery on a pregnant woman as the grounds for the Father's alleged noncompliance with the case plan. But the date of the aggravated assault offense predated the case plan. The aggravated battery offense occurred on May 25, 2009, after the case plan was in effect. Thus the only new law violation that occurred during the pendency of the case plan was the aggravated battery offense. The trial court's order appears to implicitly recognize this fact by mentioning only the aggravated battery conviction in the findings.
[4] The Guardian ad Litem (the GAL) took a different view. According to the GAL, there was no significant love, affection, or other emotional ties between the children and the parents. The GAL reported that the children had formed a significant relationship with the foster parents, who wished to adopt them.
[5] Because we conclude that DCF failed to establish a statutory ground for termination, we do not address the trial court's findings regarding the manifest best interests of the children or whether termination was the least restrictive means of protecting the children from harm. See Rathburn v. Dep't of Children & Families, 826 So.2d 521, 523 (Fla. 4th DCA 2002) ("There is a two[-]step process inherent in the statutory scheme for termination of parental rights, pursuant to chapter 39. First, the trial court must find by clear and convincing evidence that one of the grounds set forth in section 39.806, Florida Statutes (2001)[,] has been established. Second, the trial court shall consider the manifest best interests of the child...."); V.W. v. Dep't of Children Family Servs., 863 So.2d 480, 483 (Fla. 2d DCA 2004) ("Beyond these statutory requirements, the termination of parental rights is subject to a constitutional requirement: `[B]ecause parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm.'" (quoting Padgett v. Dep't of Health Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991)).