# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D19-163
_____

DEPARTMENT OF CHILDREN AND
FAMILIES and THE GUARDIAN AD
LITEM PROGRAM,

     Appellants,

     v.

K.W., Mother of A.C. and C.S.,
Minor Children,

     Appellee.

_____

On appeal from the Circuit Court for Leon County.
Jonathan Sjostrom, Judge.

July 10, 2019

PER CURIAM.

In this appeal, the Department of Children and Families (the Department) and the Guardian Ad Litem Program (the GAL) challenge the trial court's denial of the petition to terminate the parental rights (TPR) of the mother, K.W.  The appellants argue the trial court's determination that TPR was not in the manifest best interests of the children was not supported by competent, substantial evidence.  We agree and reverse.

In 2017, the Department removed the mother's two young children, A.C. and C.S., from her care due to a suspicious burn on

C.S.'s leg. The children were placed with the great-grandmother, B.B. The mother consented to dependency of the children who remained in the great-grandmother's care throughout this case. In 2018, the Department filed a TPR petition as to the mother and the two fathers.[1]

At the TPR hearing, the evidence supported the trial court's finding there was "no way to dispute" the overwhelming evidence for terminating the mother's parental rights under section 39.806(1)(e)1., Florida Statutes (2018). However, the trial court determined TPR was not in the manifest best interests of the children and denied the petition. The appellants argue that the trial court incorrectly applied the law regarding manifest best interests and its denial must be reversed because it was not supported by competent, substantial evidence. We agree.

There are three requirements to TPR. First, the Department must prove one of the statutory grounds under section 39.806, Florida Statutes. Second, the Department must show that TPR is in the children's manifest best interests. Third, TPR must meet the least restrictive means test. *See J.P. v. Fla. Dep't of Children & Families*, 183 So. 3d 1198, 1203 (Fla. 1st DCA 2016) (quoting *N.L. v. Dep't of Children & Family Servs.*, 843 So. 2d 996, 1000 (Fla. 1st DCA 2003)). The Department's burden of proof is by clear and convincing evidence. *W.W. v. Dep't of Children & Families*, 218 So. 3d 490, 493 (Fla. 1st DCA 2017) (citing *A.H. v. Dep't of Children & Families*, 144 So. 3d 662, 665 (Fla. 1st DCA 2014)). On appeal, the appellate court looks to whether competent, substantial evidence supports the trial court's final judgment, but the appellate court's role is not to reweigh the evidence heard by the trial court. *J.P.*, 183 So. 3d at 1203. Reversal of an order denying a TPR petition is appropriate where denial is not supported by competent, substantial evidence and is not in the children's best interests. *Dep't of Children & Families v. K.F.*, 916

---

[1] At the time of the mother's TPR hearing, C.S.'s father had not been properly noticed, so his TPR hearing was continued. A.C.'s father's parental rights were terminated by default. This appeal only addresses termination of the mother's parental rights.

So. 2d 948, 949 (Fla. 4th DCA 2005) (citing *Dep't of Children & Families v. A.D.*, 904 So. 2d 480, 482 (Fla. 1st DCA 2005)).

We agree with the trial court that clear and convincing evidence supported TPR of the mother's rights under section 39.806(1)(e)1. However, we disagree with the trial court's determination that TPR was not in the children's manifest best interests.

Manifest best interests are addressed in section 39.810, Florida Statutes (2018), which provides:

In a hearing on a petition for termination of parental rights, the court shall consider the manifest best interests of the child. This consideration shall not include a comparison between the attributes of the parents and those of any persons providing a present or potential placement for the child. For the purpose of determining the manifest best interests of the child, the court shall consider and evaluate all relevant factors[.]

The statute provides a non-exhaustive list of eleven factors the trial court should consider. The factors relevant to this appeal are:

(1) Any suitable permanent custody arrangement with a relative of the child. However, the availability of a nonadoptive placement with a relative may not receive greater consideration than any other factor weighing on the manifest best interest of the child and may not be considered as a factor weighing against termination of parental rights. If a child has been in a stable or preadoptive placement for not less than 6 months, the availability of a different placement, including a placement with a relative, may not be considered as a ground to deny the termination of parental rights.

. . . .

(5) The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to

the child that would arise from the termination of parental rights and duties.

. . . .

(8) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

The trial court found the remaining eight factors either supported TPR or were neutral, but found no clear and convincing evidence to TPR under factors (1), (5), and (8).

Under factors (1) and (8), the trial court was concerned with the suitability, longevity, and permanency of the great-grandmother as a placement for the children. The trial court's order emphasized the "**great**-grandmother" was "frail and elderly," which gave the court concern "about the extent to which this placement is reliable in the long term" given the young age of the children. We disagree with the trial court's findings on these two factors.

The Department introduced clear and convincing evidence that the great-grandmother, who was in her sixties, was a suitable, stable, and desirable placement. The children had been with the great-grandmother for eighteen months at the time of hearing – a large portion of their young lives. Several witnesses testified the children were well cared for with the great-grandmother; she met all their needs; and, as the trial court recognized, there was a "deep parental bond." The great-grandmother testified she was in good health[2] and was willing to care for the children for the long term. The great-grandmother also testified she would allow the children to have continued contact with the mother if her rights were terminated.

While it did not say as much, the trial court seems to have regarded the great-grandmother as an unsuitable permanent placement for the children due to its observation that she was "frail

---

[2] The Department later introduced a physician's report confirming the great-grandmother was in good health.

4

and elderly." Presumably, the trial court believed the children could possibly be placed with a different relative. This should not have been part of the trial court's decision on TPR as section 39.810(1) provides:

> If a child has been in a stable or preadoptive placement for not less than 6 months, the availability of a different placement, including a placement with a relative, may not be considered as a ground to deny the termination of parental rights.

That section also states that the availability of a nonadoptive placement with a relative "may not be considered as a factor weighing against termination of parental rights." There was no competent, substantial evidence to support the trial court's speculation that the great-grandmother may not be able to care for the children long term. On the contrary, the evidence showed she was appropriately caring for the children and believed she could continue to do so in the long term. The trial court's observation that the great-grandmother was "frail and elderly" was also contrary to the evidence that she was only in her sixties and was in perfectly good health. The Department put forth clear and convincing evidence to prove TPR was in the children's manifest best interests on these two factors. The trial court's conclusion to the contrary should be reversed as it was based on unsupported factual findings. *See In re L.B.W.*, 863 So. 2d 480 (Fla. 2d DCA 2004) (reversing a TPR order where the trial court found that there was no suitable placement for the child due to the grandmother's "failing health," which finding was not supported by clear and convincing evidence).

The trial court also found against TPR on factor (5), but there was very little elaboration on its reasoning. The trial court found the extended family was estranged from the great-grandmother, but that was not supported by competent, substantial evidence. The trial court acknowledged this when it found a "significant amount of estrangement, but it is vague to my knowledge." The grandmother did testify that the great-grandmother had, on occasion, made it difficult for the mother to see the children, but the great-grandmother testified she would continue to allow contact after TPR so long as the mother behaved appropriately.

5

The testimony did support the trial court's finding that the children had relatives out of state, but there was very little evidence of the nature of their relationship to the children. The trial court found it did not have "testimony that those relationships exist." To the extent the mother wished to show the children had a bond with extended family that would be strained by TPR, she failed to introduce any evidence to rebut the evidence suggesting the young children had a minimal relationship with extended family. The trial court's finding of estrangement and its potential impact on the children was not supported by competent, substantial evidence. The trial court's determination that TPR was not in the children's manifest best interest on this factor was based on unsupported factual findings and should be reversed. *See K.F.*, 916 So. 3d at 950 (reversing trial court's order that found grounds for TPR but denied TPR was in children's manifest best interest where the trial court's conclusion was not supported by competent, substantial evidence and was contrary to the evidence presented at trial).

Because the trial court found TPR was not in the children's manifest best interests, it did not proceed to the third ground – least restrictive means. Parents have a fundamental liberty interest in parenting a child, so TPR must be the "least restrictive means" of protecting the child from harm. *S.M. v. Fla. Dep't of Children & Families*, 202 So. 3d 769, 772 (Fla. 2016) (citing *Padgett v. Dep't of Health & Rehab. Servs.*, 577 So. 3d 565, 571 (Fla. 1991)). The least restrictive means test focuses on what actions were taken by the State before the TPR petition was filed. *S.M.*, 202 So. 2d. at 778. Generally, a case plan and services satisfy the least restrictive means prong. *Id.* The parental bond and the existence of another permanency option, such as guardianship, are not relevant considerations in determining least restrictive means. *Id.* at 780. The least restrictive means test does not require the court to preserve the parent-child bond at the cost of the children's future. *Id.* Rather, it requires that those measures short of termination be utilized if such measures can permit the safe reestablishment of the parent-child bond. *Id.*

The evidence showed that TPR was the least restrictive means. There was no doubt that the children could not be reunified with the mother who the trial court described as having

6

difficulty "keeping body and soul together for herself." While there was a bond between the children and the mother, testimony established it was an "anxious bond" due to the mother's inconsistency. Testimony also showed the mother's inconsistency was detrimental to the children's wellbeing. The Department's witnesses recommended TPR, and the case manager testified TPR was the least restrictive means. Several witnesses testified that the children's need for permanency outweighed any potential harm from TPR. Despite denying the petition for TPR, the trial court also recognized the children needed permanency, stating "we may need to consider an alternative determination in adoption." There was no evidence suggesting measures short of TPR were a possibility in this case. The trial court found grounds for TPR. We find the Department proved TPR was in the children's manifest best interests and was the least restrictive means. *Dep't of Children & Families. v. B.C.*, 185 So. 3d 716, 720 (Fla. 1st DCA 2016) ("Where clear and convincing evidence establishes the grounds for termination and that termination is in the manifest best interests of the child, the least restrictive means test does not stand as an impenetrable barrier to achieving what is ultimately in the child's best interest.").

We recognize the trial court was in a much better position to evaluate the great-grandmother's condition and any potential estrangement. We also recognize there may have been circumstances outside the record on appeal that gave the trial court pause regarding the great-grandmother. However, given the record before us, the trial court's findings were unsupported and contrary to the evidence. As such, we are constrained to reverse the order denying the TPR petition because the Department met its burden and the trial court's conclusion that TPR was not in the children's manifest best interests was based on unsupported factual findings. On remand, we direct the trial court to enter judgment terminating the mother's parental rights to A.C. and C.S. *See A.D.*, 904 So. 2d at 482 (reversing order denying TPR and remanding for judgment of TPR to be entered); *K.F.*, 916 So. 2d at 950 (reversing an order denying TPR because the court's manifest best interest findings were not supported by competent, substantial evidence and remanding for entry of a TPR order).

REVERSED and REMANDED.

7

WOLF, ROBERTS, and JAY, JJ., concur.

————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

————————————————

Sarah J. Rumph and Laura Battaglia of Children's Legal Services, Tallahassee, for Appellant Department of Children and Families.

Thomasina F. Moore, Sara Goldfarb, and Richard Paul Gillis of the Guardian ad Litem Program, Tallahassee, for Appellant the Guardian ad Litem Program.

Crystal M. Frusciante of Frusciante Law Firm, P.A., Sunrise; Anne Marie Perine, Assistant Regional Conflict Counsel, Tallahassee, for Appellee.